The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela Young. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The defendant-employer was a duly qualified self-insured and Key Risk Management Services was the servicing agent.
4. The parties stipulated to the introduction of a packet of the plaintiff's medical exhibits from Betsy Johnson Memorial Hospital, Raleigh Neurosurgical Clinic, Inc., and Dunn-Erwin Medical Center.
5. The parties stipulated to an Industrial Commission Form 22 establishing the plaintiff's average weekly wage as $201.53 per week, yielding a compensation rate of $134.36.
6. The parties stipulated to the introduction of a subpoena to lay witness Marlene Solies, although this witness was not identified in the Pre-Trial Agreement.
7. The issues presented are:
 a) Whether the plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on July 8, 1996?
 b) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. The plaintiff-employee began working as a scanner for the defendant-employer in April of 1996. Her duties included removing grocery products from boxes moving along a conveyor belt and scanning the products. The plaintiff-employee scanned approximately 10,000 items per day.
2. The plaintiff-employee testified that on 8 July 1996 as she lifted a box of Juicy Juice bottles in preparation to scan the bottles, she felt a pulling sensation in her left shoulder and pain and numbness in her arm and neck.
3. The plaintiff-employee reported her alleged injury to Boris M. Ferguson, manager with the defendant-employer and was escorted to Betsy Johnson Memorial Hospital where she complained of left shoulder pain.
4. The treating physician at Betsy Johnson Memorial Hospital recommended rest and application of moist heat to the shoulder and noted that the plaintiff-employee could return to work in 11 July 1996.
5. A statement written by a deceased, former employee of the defendant-employer, Joe McNair, was introduced into evidence. Mr. McNair's job was to lift boxes from the conveyor belts. In his statement, Mr. McNair indicated that he picked up all of the boxes on 8 July 1996 and did not see the plaintiff-employee lifting any boxes.
6. Cynthia Melvin, another employee of the defendant-employer, who worked directly beside the plaintiff-employee, testified that she saw Mr. McNair pick up and place on the conveyor the specific juice box which the plaintiff-employee testified she lifted. Ms. Melvin stated that shortly after Mr. McNair lifted the box, the plaintiff-employee went to the office complaining she had hurt her arm. Ms. Melvin also testified that the plaintiff-employee came to work the morning of 8 July 1996 already complaining of arm and shoulder pain. Ms. Melvin testified that the plaintiff-employee's boyfriend worked nights and that the plaintiff-employee cared for her elderly mother on weeknights.
7. June Estep, the plaintiff-employee's co-employee and lead person on the shift, testified that she also saw Mr. McNair pick up and place on the conveyor the specific juice box which the plaintiff-employee testified she lifted. Ms. Estep testified there would be no reason for an employee in the plaintiff-employee's position to lift boxes from the floor to the conveyor belt since the boxes came to the scanners on the conveyor belt. Ms. Estep also indicated that when the plaintiff-employee reported for work on the morning of 8 July 1996, she was already slumped over and moving slowly. The plaintiff-employee asked Ms. Estep for aspirin or some other pain reliever prior to starting her shift.
8. Audrey Johnson, an employee of the defendant-employer, who worked near the plaintiff-employee, testified that there would have been no reason for the plaintiff-employee to lift boxes from the floor to the conveyor belt since the boxes came to the scanners on the conveyor belt. She also testified that she heard the plaintiff-employee say that she was caring for an elderly lady Monday through Friday after work.
9. Bob Stafford, supervisor at the defendant-employer, testified that he overheard a conversation between the plaintiff-employee and co-worker, Gail Twe, in the defendant-employer's parking lot on the morning of the alleged injury during which the plaintiff-employee indicated that she had hurt herself taking care of her boyfriend's mother.
10. The plaintiff-employee presented to Dr. Lakshman Rao on 11 July 1996 and provided a history of having been injured while lifting boxes at work. Dr. Rao ordered an MRI which showed degenerative and congenital spinal stenosis from C3-C4 to C6-C7, mild disk bulging at other levels and posterior osteophytosis.
11. Dr. Rao referred the plaintiff-employee to neurosurgeon, Dr. Samuel K. St. Clair. Based upon an examination of the MRI scan of the plaintiff-employee's cervical spine, Dr. St. Clair noted degenerative changes at multiple levels and a left-sided lesion at the C5-C6 level which could be a disk or degenerative change.
12. While both Dr. St. Clair and Dr. Rao opined that the plaintiff-employee's alleged injury could have caused her current symptoms, both agreed that their opinions on causation were dependent upon the history the plaintiff-employee provided regarding the alleged work injury.
13. The plaintiff-employee did not return to work for the defendant-employer. The plaintiff-employee sought employment with M. J. Sofie, but did not obtain the job.
14. The plaintiff-employee offered no evidence that she could not perform a job with M. J. Sofie and she did not discuss the possibility of performing the job with her physicians. Additionally, the plaintiff-employee offered no evidence that she was not employed by M. J. Sofie because of her alleged injury.
15. Since July of 1996, the plaintiff-employee obtained employment at Sonny's, a convenience store, where she earned $5.00 per hour working 34 to 36 hours per week. The plaintiff-employee testified that she quit that job because her husband did not want her to work there.
16. In listening to all of the testimony presented at the hearing, the Deputy Commissioner had the unique opportunity to view the demeanor of all of the witnesses, including the plaintiff-employee, and to listen to the intonation of all of the witnesses, including the plaintiff-employee. Based on these observations, the Deputy Commissioner gave greater weight to the testimony of the defendant's witnesses. Therefore, the Full Commission finds plaintiff-employee did not carry her burden of proof.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course and scope of her employment with the defendant-employer on 6 July 1996. N.C. GEN. STAT. §97-2(6).
2. The plaintiff failed to carry the burden of proof to establish that she injured herself at work. Any injury the plaintiff suffered came from a non-work-related event at some other time. Since the plaintiff failed to carry her burden of proof in this case, she is not entitled to benefits under the North Carolina Workers' Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The plaintiff's claim is and under the law must be DENIED.
2. Defendant's Motion to Dismiss is DENIED.
3. Each side shall pay its own costs, except that the defendants shall pay expert witness fees in the amount of $90.00 to Dr. Rao and $100.00 to Dr. St. Clair.
This the ___ day of November 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
TJB/cnp/db